DREW, J.
11 Plaintiffs, six former members[1] of the Board of Managers of Monroe Surgical Hospital, LLC (“the hospital”), have brought this quo wamnto[2] proceeding against three defendants[3] who now serve on the hospital’s Board of Managers. The trial court properly limited testimony to only the issues relevant to this extraordinary writ, and denied any relief to the plaintiffs. We agree with the ruling of the trial court, and annex its “Ruling on Motion Remaining Issue” as Appendix “A” to *203 this opinion, adopting the excellent reasoning reflected therein.
FACTS
The hospital provided medical services in the Monroe area, being established as a limited liability corporation (“LLC”). The juridical entity has three classes of stock:
• Class “A” — Shareholders from the medical field;
• Class “B” — Nonmedical shareholders; and
• Class “C” — Shares reserved for other hospitals.[4]
This chronology may help put the facts into context:
• April 1, 2006. The hospital, in order to secure needed funding, approves a Consent Resolution, which, among other things, approves the granting to Vantage Health Plan, Inc., an irrevocable right to assume voting control of the hospital, and is signed by seven of the eight managers, including three of the current plaintiffs/appellees. The resolution was also signed by 34 of the 44 | ?Class “A” (77%) member/physicians, including all six current plaintiffs/appellees.[5]
• April 1, 2006. Pursuant to the Consent Resolution, the hospital grants a three-year Irrevocable Membership Interest Option to Vantage,[6] in exchange for, among other things, $900,000, subject to a credit for any case management fees paid to the hospital.
• April 1, 2006 — August 20, 2008. Under management of the former board, the hospital operates for 28 months, with the business entity receiving far more than the total $900,000 from Vantage.[7]
• August 20, 2008. Within the three-year option period, Vantage forwards written notice to the hospital, advising that it was triggering its rights to obtain voting control of the hospital.
• August 25, 2008. At a special meeting of the former board, attended by seven of the eight former board members, various actions are taken, without a dissenting vote,[8] in furtherance of an orderly transition of hospital control to Vantage, immediately after which meeting all board members, except one,[9] resign.
• August 28, 2008. Vantage hires Dr. Garland McCarty as the new CEO of the hospital.
• September 10, 2008. At a subsequent meeting of the board,[10] Dr. McCarty is selected/appointed to the board by Dr. Yarbrough, and then five other members of the board are selected by Dr. Yarbrough and Dr. McCarty — Dr. Robert Raulerson, Keith McRee, and the three defendants/appellees herein,
1. Dr. P. Gary Jones,
*204 2. Mike Breard, and
3. Rhonda Haygood.
|3* May 16, 2009. Eight months later, the litigation commences, including this quo warranto suit.
DISCUSSION
A. Did the trial court lawfully grant the motion in limine, allowing only evidence germane to the propriety of the election process itself?[11]
Plaintiffs argue that this matter must be reversed either because the trial court refused to consider the Consent Resolution, or because the trial court assumed it to be binding. We disagree either way.
We find that the trial court sagely granted the limitation sought by defendants. We concur in this ruling, relying upon the consistent reasoning of two of our cases, wherein we also approved the limitation of the inquiry to the narrow issue allowed by quo warranto. See Smith v. Cannon, 43,964 (La.App.2d Cir.12/28/09), 2 So.3d 1227; and Morris v. Thomason, 28,-238 (La.App.2d Cir.4/8/96), 672 So.2d 433.
Plaintiffs are sophisticated individuals, with various educational and professional achievements. In response to the Vantage takeover, the former board cooperated in the transition, resigned as managers, decided against or did not consider a derivative action, and then, much later, three of the former board members[12] filed this quo warranto proceeding.
Hindsight is, of course, 20/20, but had the plaintiffs desired to protest the adoption of the Consent Resolution,[13] an earlier derivative action may have been appropriate for a more generalized and expansive inquiry into |4any contested actions. Instead, the plaintiffs each acquiesced in and to the terms of the Consent Resolution. Now the plaintiffs complain about the very eventuality they each specifically approved, as a board member or a Class “A” stockholder, or both.
In reliance upon the Consent Resolution, Vantage has paid millions of dollars, and we are hesitant to deal with more than is on our plate now, viz., the narrow quo warranto inquiry. We find that the trial court properly found that the defendants were lawfully elected as board members by majority vote of the remaining board member(s), as per Section 6.02(f) of the Operating Agreement, which specifically calls for filling any vacancies on the Board of Managers by a majority vote of the managers.
B. Did the terms of the Operating Agreement prohibit the adoption of the April 2006 Consent Resolution, which resolution facilitated the replacement of the former membership of the Board of Managers?
Three years after Vantage’s initial $500,000 monetary investment, in April of 2006, and long after Vantage had poured another $2 million into the hospital, plaintiffs filed this suit, eight months after participating in their last hospital board meeting. The actual goal here is apparently to seek to undo the Vantage takeover, in effect claiming that their own acquiescence in the terms of the Consent Resolution, and indeed their own actions at their last board meeting, were unlawful. They can’t *205 have it both ways. All told, Vantage had the legal right to control of the hospital[14] through its Option, which was approved by the hospital. A deal is a deal.
IfiOn August 25, 2008, the former board, which included three of these plaintiffs, specifically approved the right of Vantage to exercise special voting rights of the Class “C” members, in order to appoint a new board.[15] When the smoke cleared that day, only one board member was left, Dr. David Yarbrough, who had a hospital to run. The board positions urgently needed filling, and the remaining manager did so, pursuant to the Operating Agreement.[16]
We find that the election/appointment of the three defendants to the Board of Managers was valid and lawful, in accordance with the Operating Agreement, as well as the resolutions passed at the August 25, 2008, board meeting.
We have reviewed the hospital’s election procedures, all of which appear necessary and reasonable, considering the Hospital Operating Agreement, as modified by the Consent Resolution,[17] and considering the dire circumstances[18] in which the hospital found itself in the spring of 2006.
C. Is the management of the LLC lawfully reposed in the present management?
What the former Board of Managers did on August 25, 2008, was to acquiesce in the natural end product of the contingent reorganization of the hospital approved long before, when the hospital desperately needed an | ^infusion of capital in order to keep the doors open. The new managers were selected in the same manner as always, by a majority vote of the managers, in accordance with the Operating Agreement. Testimony by the former CEO, Alan Daugherty, indicated that this same process had always been followed.
We find no error in the proceedings below. We affirm in all respects, at the cost of appellants.
DECREE
The judgment of the trial court is AFFIRMED, at the cost of plaintiffs.
APPENDIX “A”
I,DAVID RENE DUGAS, M.D., W.J. LILES, M.D., CLAUDE B. MINOR, JR., M.D., BENJAMIN M. STAGE, M.D., RANDOLPH H. TAYLOR, M.D., AND EDWARD WORLEY, II, M.D.
VERSUS
MIKE BREARD, RHONDA HAYGOOD AND P. GARY JONES, M.D.
FILED: January 22, 2010.

RULING ON MOTION REMAINING ISSUE

At the conclusion of the trial in this quo warranto suit the Court ruled that, from an objective viewpoint, the resignations of eight members of the Board of Managers of the Monroe Surgical Hospital LLC *206 (“the Hospital”) on August 25, 2008, were not forced but were the voluntary actions of these individuals. To state this another way, it is not reasonable to believe that Vantage Health Care, who is not a party to this suit, or Dr. P. Gary Jones, forced the resignations of these Managers.
Thus, the only remaining issue is whether the present Managers improperly hold their positions because the vacancies subsequent to August 25, 2008 were filled contrary to law.
The Minutes of the Special Meeting Board of Managers on August 25, 2008, reflect that during the discussion period the following occurred:
The Board determined that in light of the circumstances and recent developments, the best action was to recognize the exercise of Vantage’s Option to Purchase the St. Francis Class C Units, expedite the redemption |2of the St. Francis Class C units and recognize amendment of the Operating Agreement to allow vantage special voting rights (as holder of the reclassified St. Francis Units) to appoint a majority (currently five (5) of the nine (9)) Board Members. It was suggested that Vantage be allowed to appoint Board Members in the interim to avoid any “vacuum” in management pending the time delay in closing the St. Francis Redemption.
This discussion was followed by these motions:
1. A motion was made by Dr. Taylor and seconded by Dr. Stage to authorized Alan Daugherty to pay the amount of approximately $118,000 to St. Francis pursuant to the Consent Decree with St. Francis in order to settle all outstanding interest payments with St. Francis, and may be paid in full for the Class C Units previously redeemed. Motion was approved. Dr. Marx abstained.
2. A motion was made by Dr. Taylor and seconded by Alan Daugherty to recognize the exercise of the Option by Vantage to acquire the 100 Class C Units currently held by St. Francis thus amending the Operating Agreement of the Company to reclassify the redeemed St. Francis Class C Membership Interests so that such Units may be transferred to Vantage and further to provide that Members owning Class C Membership Interests have special voting rights to appoint a majority of the Board of Managers, and further to close the sale of the 100 reclassified Class C Membership Interests to Vantage such that upon closing, Vantage shall own all (100%) of the Class C Membership Interests outstanding issued as of this date. Motion was approved. Dr. Marx abstained.
3. A motion was made that, to the extent there is any interim period prior to the redemption, reclassification, and closing of the resale of the Class C Units to Vantage, that the Company and/or the Board hereby authorize Vantage to exercise the special voting rights available to Class C Members to appoint a majority of the Board of Managers, ratifying any such appointments as necessary to maintain a full Board of Managers and implement the change of Board control pursuant to the exercise of Vantage’s option.
4. A motion was made by Dugas, seconded by Turner, to authorize Alan Daugherty to notify all parties of the exercise of the Option by Vantage. Motion approved.
IsAfter this meeting adjourned, eight members of the Board of Managers tendered their resignations, effective immediately. This action left Dr. David Arthur Yarbrough as the only remaining member *207 of the nine member Board. The Hospital CEO, Alan Daugherty, also resigned.
In exercise of its voting rights, as recognized by the Board, Vantage hired Dr. Garland Edward McCarty as CEO of the Hospital on August 28, 2008. Dr. Yar-brough gave notice to Dr. McCarty of a Board meeting to be held on September 10, 2008, to fill the vacancies on the Board of Managers. As CEO of the Hospital, Dr. McCarty was also a member of the Board of Managers with voting rights under the Hospital’s Operating Agreement.
At the Board meeting on September 10, 2008, Dr. McCarty moved to appoint the defendants as members of the Board of Managers. This motion was seconded by Dr. Yarbrough. The defendants were elected by unanimous vote of the two Board members.
The plaintiffs contend that the intent of the parties to the Hospital’s Third Amended and Restated Operating Agreement, expressed through Section 6.07(a) & (b), was that new Managers had to be selected at a meeting of the Hospital’s Membership where all Members would have the right of input into the selection process, even though the ultimate decision of who should serve would rest with Vantage. Plaintiffs also attack the extent of rights actually acquired by Vantage when it exercised its option, specifically in the dilution of Qualified Physician Investors and employing a CEO.
The Court does not agree with or accept plaintiffs’ agreement.
14Section 6.02 (f) of the Hospital’s Operating Agreement provides that “[A]ny vacancy in any Manager position may be filled by a majority vote of the Managers.” Section 6.02 governs Selection of Managers and provides:
(b) the Managers shall include the following, each of whom shall be deemed a voting member of the Board of Managers:
(iii) the “Chief Executive Officer/Hospital Administrator” of the Company shall be entitled to (but shall not be required) to occupy a Manager’s position (the “CEO Manager”) for so long as he or she is employed by the Company in that office (or as otherwise provided in his or her Employment Agreement with the Company.)
The votes of Dr. McCarty and Dr. Yar-brough certainly constituted a “majority.” Even if Dr. McCarty was not considered a proper member of the Board, Dr. Yar-brough’s vote, if the only vote cast, would constitute a majority. Additionally, the previous Board gave Vantage the right “to appoint a majority of the Board of Managers.” See Minutes of Meeting of August 25, 2008, supra.
This Court has heretofore ruled in this quo warranto action it will only consider the authority of the Managers to hold their positions and will not consider the validity of the Consent Resolution which granted the Irrevocable Option Agreement. The extent of rights acquired by Vantage (not a party herein) when it exercised its option is beyond the scope of this suit.
For the above reasons, the demands of plaintiffs are rejected and the defendants | .^recognized as having been properly selected and elected as Members of the Board of Managers and, therefore, properly authorized to hold their positions. This action is dismissed at plaintiffs’ costs.
Monroe, Louisiana, this 22nd day of January, 2010.
/s/ John R. Harrison
JOHN R. HARRISON, JUDGE PRO TEMPORE
*208 1 íSignatories to Consent Resolution — Early April, 2006
Name Serving as one of 8 Managers at the time? Signed as Manager? Consent Resolution signed by 7 of 8 former managers. Signed as Class “A” Member? 34 of 44 signed. Now a Plaintiff? Total of 6 Plaintiffs. Consent Resolution signed by all 6.
Dr. Minor, Plaintiff Yes No Yes Yes
Dr. Marx Yes Yes Yes Not a Plaintiff.
Dr. Taylor, Plaintiff Yes Yes Yes Yes
Dr. Ban-Yes Yes Yes Not a Plaintiff.
Dr. Yarbrough Yes Yes Yes Not a Plaintiff.
Dr. Dugas, Plaintiff Yes Yes Yes Yes
Dr. Stage, Plaintiff Yes Yes Yes Yes
Mr. Daugherty, CEO Yes Yes Not an “A” Member. Not a Plaintiff.
34/44 Class “A” Members (77%) Signed.
Dr. Liles, Plaintiff No Not a Manager. Yes Yes
Dr. Worley, Plaintiff No Not a Manager. Yes Yes

. David Rene Dugas, M.D.; W.J. Liles, M.D.; Claude B. Minor, Jr., M.D.; Benjamin M. Stage, M.D.; Randolph H. Taylor, M.D.; and Edward Worley II, M.D.

. C.C.P. Art. 3901. Definition
Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers.

. Mike Breard, Rhonda Haygood, and P. Gary Jones, M.D.

. At all relevant times, St. Francis Hospital owned these issued shares.

. See Appendix B.

. In order to secure the option to obtain control of the hospital, Vantage paid $500,000 immediately and agreed to pay $400,000 more if it exercised its option, less credits. Duly authorized by the Consent Resolution, the option was signed by then-CEO Alan Daugherty, on behalf of the hospital, and by P. Gary Jones, M.D., on behalf of Vantage.

. In actuality, by the time Vantage exercised its option on August 25, 2008, it had paid approximately $2.5 million into the hospital. ** [1] *

. One board member abstained on some of the resolutions.

. Dr. David Yarbrough.

. Consisting of only one person at the meeting's inception, Dr. Yarbrough.

. The authority of the three named defendants to hold office on the Board of Managers.

. Along with three former Class "A" Members.

. Each plaintiff voted to approve the Consent Resolution in 2006.

. $500,000 up front, to keep the hospital afloat, and $400,000 (less credits) upon exercising the option.

. The other three plaintiffs signed the Consent Resolution as "Members” of the hospital.

. "Any vacancy in any Manager position may be filled by a majority vote of the Managers[.]”

. All former members of the Board of Managers signed the Consent Resolution, in one capacity or another.

. The hospital was apparently facing imminent bankruptcy, due to deteriorating finances.